1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9 PHIA HENG, | )   1:05cv0575 DLB |
| 10 | ) |
| | )   ORDER REGARDING PLAINTIFF'S |
| 11                Plaintiff, | )   SOCIAL SECURITY COMPLAINT |
| | ) |
| 12    v. | ) |
| | ) |
| 13 JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| 14 | ) |
| | ) |
| 15 | ) |
| | ) |
| 16                Defendant. | ) |

17

## BACKGROUND

18

Plaintiff Phia Heng ("Plaintiff") seeks judicial review of a final decision of the
Commissioner of Social Security ("Commissioner") denying his application for supplemental
security income pursuant to Title XVI of the Social Security Act. The matter is currently before
the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable
Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

On September 23, 2002, Plaintiff filed an application for supplemental security income
under Title XVI of the Social Security Act, alleging disability since June 20, 1985, due primarily

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

1

to residuals from a gunshot wound to the left hip.  AR 333-35, 441.  After being denied both

initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ").  AR 237.  On March 24, 2004, ALJ Patricia Leary Flierl held a hearing.  AR 436-

62.  On August 19, 2004, ALJ Leary Flierl found that Plaintiff was not disabled.  AR 14-17.  On

April 1, 2005, the Appeals Council denied review.  AR 7-9.

**Hearing Testimony**

ALJ Leary Flierl held a hearing on March 24, 2004, in Fresno, California.  Plaintiff

appeared along with his attorney, Dennis Bromberg.  AR 438.

Plaintiff was born on June 5, 1965, is 5'3" tall and weighs 155 pounds.  AR 438-439.

Plaintiff immigrated to the United States from Cambodia on August 16, 1984.  AR 439.  In 1982,

while attempting to cross the Thailand-Cambodian border, Plaintiff suffered a gunshot wound to

the hip.  AR 411.  Plaintiff underwent surgical removal of one bullet and a small bullet still

remains.  AR 411.

Plaintiff has not worked since 1986 or 1987.  AR 441.  His current source of income is

food stamps.  AR 456.  Plaintiff testified that he started receiving SSI benefits sometime around

1984-1985 and stopped receiving benefits sometime around 2001-2003.  AR 460.  Plaintiff

explained that he did not attend a hearing on the matter because he was sick.  AR 460.

Plaintiff obtained four years of education in Cambodia.  AR 439.  Plaintiff learned to

speak English by talking to people, by attending an adult school ESL class, and by watching

television.  AR 439.  Plaintiff cannot write in English and he cannot understand a basic

newspaper article.  AR 440.

Plaintiff has lived with his girlfriend and her two daughters, ages seventeen and fourteen,

for the past seven years.  AR 448-449, 456.  His girlfriend is on SSI and the daughters go to

school.  AR 449.  For the past nine or ten months, the couple has resided in an upstairs

apartment.  AR 457.  Plaintiff plans on moving to a downstairs apartment because he experiences

difficulty climbing the stairs.  AR 457.

Plaintiff's activities include: cooking two or three times a week; going to dinner with

friends and family once every two weeks; walking ten to twenty minutes per day as instructed by

his doctor; packaging laundry; and driving approximately five times per week.  AR 450-452.
Plaintiff drives to the store and to Temple.  AR 453.  Plaintiff also reads magazines in
Cambodian for thirty minute intervals.  Plaintiff explained that he cannot read longer than that
because he becomes tired and his eyes are going bad.  AR 455.

Plaintiff testified that he goes to Temple every Saturday and Sunday.  AR 449-450.
Plaintiff explained a friend usually takes him and that the services are an hour to two hours long.
AR 450.  Plaintiff testified that he cannot sit for too long, therefore he gets up after thirty
minutes, stands for five minutes, then sits back down.  AR 450.

Plaintiff experiences pain in his left hip that "comes and goes" approximately four days
per week.  AR 442.  His pain is worse when the weather is cold.  AR 442.  Plaintiff testified that
he can only sit for thirty minutes before having to get up due to pain in his buttock, which he
described as, "you know, the small, the right, you know ... it's very small."  AR 442-443.
Plaintiff also testified that he experiences difficulty walking, standing, and picking up heavy
items.  AR 443-446.  Plaintiff tires easily, experiences headaches approximately two times per
week, and cannot pick up a 10-pound bag of potatoes.  AR 454, 446.

Plaintiff brought a cane with him to the hearing.  AR 433.  He explained that he was
given a cane in Long Beach in 1984 or 1985 and that U.M.C. gave him a new one.  AR 433.
Plaintiff testified that he uses the cane "most of the time;" that he sometimes walks without the
cane but has to hold onto something; and that he sometimes walks without the cane and without
holding onto something, but that it is "kind of hard" for him.  AR 444.  Plaintiff also testified that
he cannot walk without his cane.  AR 445.  Additionally, Plaintiff testified that he can walk half
a block before he has to sit down.  AR 445.  Plaintiff walks everyday.  AR 445.  Plaintiff can
stand for five minutes without his cane and then must sit down.  AR 446.

Plaintiff takes the following medications: Neurontin, Amitriptyline, Kreppa, Imipramine,
Mapap, Ultram, and Vicodin.  AR 447-455.  Plaintiff takes most of the medications as needed for
pain. AR 448.  Plaintiff takes Amitriptyline to help him sleep.  AR 448.  Plaintiff does not nap
during the day.  AR 448.

Plaintiff receives his medical treatment at University Medical Center.  AR 458.  Plaintiff

1     has been seen by Dr. Brukowitz, Dr. Dizan, Dr. Nigwilliam, and Dr. Felmos (now retired).  AR

2     458.  Plaintiff testified that he went to one physical therapy session and denied being informed

3     that he needed to continue going.  AR  459-460.  Plaintiff testified that after the therapy session,

4     he resumed seeing his own doctor.  AR  460.

5     **Medical Evidence**

6     _____On June 5, 2001, Plaintiff complained of pain and received an X-ray of his left hip.  AR

7     393.  The conclusion was "negative."  AR 393.  The X-ray revealed no bone or joint

8     abnormalities and the soft tissues were clear.  AR 393.  That same day, Plaintiff received a

9     lumbar spine X-ray.  AR 392.  The conclusion was "essentially negative."  AR 392.  The X-ray

10     revealed the AP, lateral and both oblique views showing no significant bony abnormalities.  AR

11     392.  The X-ray note also indicated, "Minimal wedge deformity of the bodies of L1, L2, and L3

12     is developmental.  Discs are normal in height.  Apophyseal and sacroiliac joints are clear."  AR

13     392.

14        On November 27, 2001, Plaintiff arrived at Community Medical Center complaining of

15     left hip pain at a level "10" on a scale of "1-10."  AR 388.  An examination revealed decreased

16     sensation in the left hip and decreased flexion and knee extension.  AR 391.

17        On June 5, 2002, Plaintiff arrived at Community Medical Center complaining of left hip

18     pain.  AR 385.  An examination revealed tenderness in the soft-tissue of the hip and limited

19     range of motion.  AR 385.

20        On July 21, 2002, Plaintiff arrived at Community Medical Center complaining of on-

21     going left hip pain and inability to sleep.  AR 374.  Plaintiff rated his pain an "8" on a scale of

22     "1-10."  AR 374.  An examination revealed tenderness in the lower extremities, limited range of

23     motion of his left hip and an antalgic gate.  AR 379.

24        On September 19, 2002, Plaintiff arrived at Community Medical Center complaining of

25     left hip pain and inability to bear weight on his left hip.  AR 367.  Plaintiff rated his pain an "8"

26     on a scale of  "1-10."  An examination revealed tenderness in his lower extremities.  AR 367.  He

27     was given Vicodin.  AR 368, 370.

28        On September 23, 2002, Plaintiff was examined at Community Medical Center and

referred to pain management.  AR 429.  An E.M.G. was also recommended.  AR 429.  An

examination revealed that his muscle strength and range of motion were within the functional

limits, although he demonstrated an abnormal gait on the left side and experienced limited

sensation in the left thigh.  AR 430-31.  On a scale of "1-5," 1 meaning *easy* and 5 meaning

*difficult*, Plaintiff rated the following activities "2-3": washing; dressing; hair care; walking

fifteen minutes; climbing steps/stairs; sitting thirty minutes; standing twenty to twenty five

minutes; sleeping; transfers in and out of bed and car; squatting; crouching; kneeling; pushing;

pulling; and lifting ten to fifteen pounds.  Plaintiff rated the following activities a "1": reaching;

buttoning; writing; picking up coins; handling objects; moving objects; carrying objects; putting

dishes/groceries away; house work; and yard work.  Plaintiff rated housework and cooking a "3"

and rated working, sports, recreation, and hobbies both a "2 and 5."  AR 433.  The assessor noted

that Plaintiff may be motivated by secondary gain.  AR 432.

On October 21, 2002, medical records indicate that Plaintiff complained of left hip pain

and depression.  AR 427.   Plaintiff was prescribed Neurontin (330 mg), with the possibility of an

increase in dosage to 600 mg.  AR 427.  Plaintiff's prescription for Elavil was increased to 50

mg.  Plaintiff was referred to neurology.  AR 428.

On November 20, 2002, Plaintiff was discharged from physical therapy due to

nonattendance.  AR 435.  The report indicates Plaintiff attended one scheduled physical therapy

appointment between September 23, 2002 and November 20, 2002.  AR 435.

In December 2002, a U.M.C. Adult Health Progress Record indicates that Plaintiff was

taking Tylenol for pain.  AR 425.  At this exam, Plaintiff complained of itchy eyes and throat and

requested refills on his prescription.  AR 425.  Plaintiff indicated that Neurontin was helpful in

alleviating his pain and Elavil was helping him sleep.  AR 425.  Plaintiff's Neurontin dosage was

increased to 600 mg and his Elavil prescription was refilled.  AR 425.

On January 13, 2003, an orthopedic consultation was performed at Valley Heath

Resources in Fresno at the request of the Department of Social Services.  AR 394.  Plaintiff's

chief complaint was left hip pain.  AR 394.  An interpreter was deemed necessary for the

evaluation.  AR 394.  Plaintiff reported that a bomb went off, causing injury to his left leg.  AR

1   394.  The record states that Plaintiff had previously underwent a debridement of his left hip.   AR

2   394.  Plaintiff reported taking Amitriptyline, MAPAP and Ibuprofen.  AR 394.  Plaintiff walked

3   with a slight limp only on the right side.  AR 395.  Plaintiff could "stand on his toes and heels

4   well with difficulty."  AR 395.  The examination also revealed that Plaintiff's flexion, right

5   rotation, left rotation, and later flexion of his cervical spine and lumbar spine were within the

6   normal limits.  AR 395.  The report notes the "contour, curvature and alignment of the cervical

7   spine is normal.  No spasm or tenderness present ...  No tenderness to percussion in the lumbar

8   area of the spine.  No sciatic notch tenderness on either side.  No sacroiliac joint tenderness on

9   either side."  AR 395.  Additionally, Plaintiff's "straight leg raising is to 80 degrees bilaterally

10  without pain."  AR 395.  An examination of Plaintiff's Upper and Lower Extremities revealed

11  findings within the normal limits.  AR 396.  Dr. Troy Smith concluded, "At the present time the

12  patient is unable to do work which requires repeated bending or heaving lifting.  The patient can

13  lift 50 pounds occasionally 25 pounds frequently.  The patient can sit, stand and walk six hours

14  out of an eight hour day with normal breaks.  The patient can kneel, squat and climb stairs.  He

15  does not need to use a cane for regular activities but may need to use a cane if he does any

16  prolonged standing or walking."  AR 398.

17          On January 28, 2003, James Glaser, M.D., a state agency physician, reviewed Plaintiff's

18  medical records and agreed essentially with Dr. Smith's conclusions, adding a postural limitation

19  of "stooping occasionally."  AR 401-410.

20          On March 10, 2003, Plaintiff reported he was taking Motrin and Neurontin and that

21  Neurontin was helping.  AR 424.  At this time, his prescriptions were filled and an E.M.G. was

22  recommended.  AR 424.

23          On March 11, 2003, Plaintiff received an X-ray of his hip.  The results were negative.

24  AR 393.

25          On March 21, 2003, Brian Ginsburg, M.D. reviewed Plaintiff's medical records and came

26  to the same conclusion as Dr. Smith.  AR 399-00, 410.

27          In March 2003, an E.M.G. was requested and denied.  AR 422.  The reviewer questioned

28  how an E.M.G. would alter the management of the Plaintiff's problem or enhance his treatment.

1   AR 422.

2       On April 14, 2003, Plaintiff complained of leg pain and was prescribed Neurontin.  AR

3   412.

4       On May 15, 2003, Plaintiff was referred to a nuerologist to address his pain complaint.

5   AR 417.

6       In October 2003, Plaintiff underwent a neurological examination.  AR 415.  The

7   examination revealed that Plaintiff had clear sensorium, normal reflexes and strength, was very

8   muscular, had a two degree antalgic gait due to his left hip, slight left bottom atrophy, and

9   decreased sensation and range of motion associated with his left thigh.  AR 415.  Plaintiff was

10  prescribed Neurontin and Elavil.  AR 415.

11      An Adult Heath Progress Record dated October 14, 2003, indicates Plaintiff had

12  previously had been taking Motrin for ten years but stopped in 2002 due to stomach upset.  AR

13  415.  At the date of this record, Plaintiff was taking 900 mg of Neurontin and 50 mg of Elavil

14  and Tylenol for pain.  AR 415.  A notation at the bottom of the record reads, "10/14/03 Staff- I

15  am unconvinced of the necessity to Rx this long standing problem with narcotics."  AR 415.

16      On November 7, 2003, Plaintiff was taking several medications prescribed by different

17  doctors.  AR 363.  Plaintiff was taking 600 mg of Neurontin and 500 mg of MAPAP, prescribed

18  by Dr. Dizon; 300 mg of Neurontin and 500 mg of Amitriptyline, prescribed by Dr. Flemus; 10

19  mg of Imiprumine, prescribed by Dr. Nguyen; and 50 mg of Ultram, prescribed by Dr.

20  Berkowtiz.  AR 363.

21      On December 5, 2003, Plaintiff complained of neuropathic pain in his left hip.  AR 413.

22  The neurologist recommended lifelong treatment.  AR 413-14.  Plaintiff was prescribed Vicodin

23  and referred to a pain management clinic.  AR 413.

24  **ALJ's Findings**

25      The ALJ found that Plaintiff has residuals from a gunshot wound to his left hip, which are

26  "severe" impairments as defined in the regulations and rulings.  AR 14.

27      The ALJ also found that Plaintiff does not have any impairment or combination of

28  impairments satisfying the criteria set forth in any section of Appendix 1, Subpart P, Regulation

No.4.  AR 14.

In addition, the ALJ determined that Plaintiff's impairments are not as limiting as he alleges.  AR 15.  Based on this, the ALJ found that Plaintiff retained the residual functional capacity (R.F.C.) to perform sedentary work.  AR 16.

Considering Plaintiff's R.F.C., age, education, and work experience, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy and therefore was not disabled.  AR 16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]   Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment that is considered "severe" (residuals from a left hip gunshot wound) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work experience; and (5) retains the R.F.C. to perform a full range of sedentary work.  AR 14.

Plaintiff argues that the ALJ (1) failed to give clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms; (2) failed to give specific and legitimate reasons for disregarding the opinions of the consultative examiner and state agency physician; (3) overlooked significant relevant evidence in determining Plaintiff's R.F.C.; and (4) erred by failing to elicit the testimony of a vocational expert.

## DISCUSSION

**A.     Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms.

The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting the claimant's testimony, "the ALJ must identify what testimony is not credible and what

---

[2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1   evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

2   1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

3   1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

4   severity of his pain and impairments is unreliable, the ALJ must make a credibility determination

5   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

6   discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

7          "The ALJ may consider at least the following factors when weighing the claimant's

8   credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

9   testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work

10  record, and testimony from physicians and third parties concerning the nature, severity, and effect

11  of the symptoms of which [claimant] complains.'"  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

12  789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in

13  the record, we may not engage in second-guessing."  *Id.*

14          Plaintiff contends that "once a claimant submits objective medical evidence establishing

15  an impairment that could reasonably be expected to cause some pain, 'it is improper as a matter

16  of law for an ALJ to discredit excess pain testimony soley on the grounds that it is not fully

17  corroborated by objective medical findings.'" *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.

18  1986).  Based on this, Plaintiff argues that the ALJ erred by improperly determining that

19  objective evidence regarding Plaintiff's chronic neuropathic pain syndrome and degenerative

20  joint disease did not support Plaintiff's allegation regarding the severity of his symptoms.  This

21  argument is without merit.

22          First, the ALJ gave adequate reasons for rejecting Plaintiff's testimony and did not rely

23  *soley* on objective medical evidence.  The ALJ began her credibility analysis by recognizing that

24  Plaintiff's impairments "could reasonably be expected to produce some of the symptoms he

25  alleges, but the degree of his limitations is not supported by the objective medical evidence *and*

26  is not entirely credible when evaluated under Social Security Ruling 96-7 p."  (emphasis added)

27  AR 15.  The ALJ noted that a therapist reported a poor or fair prognosis because of questionable

28  motivation for secondary gain; that during a claims interview, the claims representative observed

10

that Plaintiff had no physical difficulties; that Plaintiff does not always take his medications; and that Plaintiff was discharged from therapy because of nonattendance.  AR 15.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).  Furthermore, the ALJ  properly took into account Plaintiff's *daily activities* in making her determination.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002); (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  For example, the ALJ noted that Plaintiff cooks several times a week, drives a car approximately five times a week, and goes out to dinner.  AR 15.  Moreover, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.  *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989).

Second, the ALJ properly considered the medical findings *in addition* to other evidence on record.  The ALJ noted that medical evidence between September 2002 through December 2003 showed that Plaintiff was treated for left hip pain.  AR 15.  Furthermore, the ALJ discussed the January 2003 medical report by Dr. Smith in which he concluded that Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday with bending occasionally.  AR 15.  The ALJ also noted that the state agency medical consultants found that Plaintiff had the R.F.C. capacity to perform medium work with stooping occasionally.  AR 15.  *Thomas, supra* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

Third, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility.  While courts give the SSRs some deference, they do not have the force of law.  *Holohan v. Massanari*, 246 F.3d 1195, 1203, n.1 (9th Cir. 2001).

Fourth, Plaintiff argues that the ALJ erred by failing to mention medical evidence during the years 2001 and 2002.  While it is true that the ALJ is required to consider the entire record, the ALJ is not required to list every piece of medical evidence in her decision.  In any event, a review of the medical evidence between the years 2001-2002 reveals that Plaintiff's chief

complaint was left hip pain– the same complaint Plaintiff alleges in the years that follow.
Furthermore, there is no indication that Plaintiff's injury or related pain was worse during this
time period.

Fifth, Plaintiff argues that the ALJ had a duty to develop the record.  "An ALJ's duty to
develop the record further is triggered only when there is ambiguous evidence or when the record
is inadeqaute to allow for proper evaluation of the evidence."  *Mays v. Massanari,* 276 F.2d 453,
460 (9th Cir. 2001).  In this case, there is no suggestion of an ambiguous or inadequate record.
As Plaintiff fails to demonstrate grounds to develop the record further, this argument fails.

Plaintiff's overall contention appears to be that the ALJ erred because evidence exists
supporting his claim of disability.  However, this is not the correct standard of review.  Plaintiff
will not prevail simply because there is evidence supporting his position.  *Richardson v. Perales*,
402 U.S. at 399; *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982).  Rather, the decision of
the Commissioner to deny benefits will be overturned only if it is not supported by substantial
evidence or is based on legal error.  *Matney v. Sullivan* 981 F.2d 1016, 1019 (9th Cir. 1992).

**B.     Medical Opinions**

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for disregarding
the opinions of the consultative examiner and state agency physician.  This argument is without
merit.

In regards to medical opinions, the medical opinion of a claimant's treating physician is
entitled to "special weight."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v.
Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician
is based not only on the fact that he is employed to cure but also on his greater opportunity to
observe and know the patient as an individual.  However, a treating physician's opinion is not
conclusive as to a physical condition or the ultimate issue of disability.  *Magallanes*, 881 F.2d at
751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a
contradicted treating physician's opinion on the basis of clear findings that set out specific,
legitimate, reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A
statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will

concur, absent review of medical findings and other evidence.  20 C.F.R. 416.927(e).

"Conclusory opinions by medical experts regarding the ultimate question of disability are not

binding on the ALJ."  *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

In this case, the ALJ properly considered the consultive examiner's opinions and the state

agency medical consultants' opinions in determining Plaintiff's residual functional capacity.  Dr.

Smith's occasional bending limitation and Dr. Glasser's limitation for occasional stooping is

accounted for in the ALJ's determination that Plaintiff retains an R.F.C. capacity for sedentary

work.  According to SSR 83-14, sedentary work includes occasional bending and occasional

stooping, which does not contradict the medical opinions at issue.  However, even if the state

agency medical consultants had concluded that the Plaintiff was disabled, the ALJ is not bound

to accept that finding.  20 C.F.R. 416.927(e).

## C.      R.F.C.

Plaintiff argues that the ALJ failed to consider Plaintiff's difficulty concentrating and

Plaintiff's inability to sit, in determining Plaintiff's R.F.C.  In doing so, Plaintiff lists the

common side effects of his medications to include:  sedation; drowsiness; disturbed

concentration; excitement; anxiety; insomnia; fatigue; headaches; and weakness.  This argument

is without merit.

Plaintiff is correct, that according to SSR 83-12, if an individual is able to sit for a period

of time, but must then get up and walk for awhile before returning to sitting, he is not

functionally capable of doing the necessary sitting contemplated in the definition of sedentary

work.  However, Plaintiff's allegations of limited ability to sit and concentrate are based on his

testimony, which is subject to the ALJ's credibility determination.

"If an ALJ's credibility finding is supported by substantial evidence in the record, a

reviewing court may not engage in second-guessing."  *Thomas, supra* (citing *Light v. Soc. Sec.

Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  A reviewing court will not reverse an ALJ's

credibility determinations "based on contradictory or ambiguous evidence."  *Johnson v. Shalala,*

60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler* 749 F.2d 577, 579 (9th Cir. 1984)).

"So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991). Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v, Chater,* 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982)).

In making her determination, the ALJ considered Dr. Smith's report, which indicated that Plaintiff could "sit, stand and/or walk 6 hours in an 8-hour workday." (emphasis added)  AR 15. The ALJ also noted the state agency medical consultants' evaluation, which made no limitation for sitting or concentrating.  AR 15.  In addition, the ALJ considered non-medical evidence, including Plaintiff's testimony.  Accordingly, the Court will not further evaluate the ALJ's decision to discredit Plaintiff's allegations of difficulty sitting and concentrating.

Insofar as Plaintiff argues the ALJ failed to take into account possible side effects of Plaintiff's medications, his argument fails.  It is true that side effects of prescribed medication may have a significant impact on an individual's ability to work, and therefore should be considered in making a disability determination.  *Varney v. Secretary of Health & Human Serv.,* 846 F.2d 581, 585 (9th Cir. 1988).  However, the side effects listed by Plaintiff's counsel are merely *potential* side effects.  According to Plaintiff's testimony, the only side effect he has experienced is stomach upset, which he described as "annoying."  AR 447.  There is no indication that this stomach upset affects Plaintiff's ability to work, let alone has a significant impact on it.

Finally, Plaintiff argues that the ALJ failed to take into account Plaintiff's left buttock atrophy in determining Plaintiff's residual functional capacity.  Plaintiff notes that on October 14, 2003 and October 21, 2003, Plaintiff was examined at University Medical Center and the examinations revealed buttock atrophy.  AR 415.  The Court acknowledges that these medical records indicate muscle atrophy.  However, the records fail to indicate that Plaintiff suffers any impairments as a result.  AR 415.  In addition, although Plaintiff testified that he cannot sit for

more than thirty minutes due to pain in his buttock and that one buttock is smaller than the other, the ALJ properly discredited this testimony as discussed above. AR 442-443. Furthermore, even if Plaintiff had demonstrated that the buttock atrophy results in an impairment, that alone is not sufficient to sustain a finding of disability. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**D.   Vocational Expert**

Plaintiff contends that the ALJ erred by failing to elicit the testimony of a vocational expert, to describe what, if any, jobs existed in the national economy that Plaintiff would be able to perform. The Court also rejects this contention. While significant non-exertional impairments may make reliance on the grids inappropriate, the mere allegation of a non-exertional limitation does not automatically preclude the application of the grids. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). However, if the ALJ finds that a non-exertional limitation exists, and that it significantly affects the range of work described in the grids, use of the grids would be inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that plaintiff would be able to perform. *Id*.

In this case, the ALJ found that Plaintiff retains the R.F.C. for sedentary work, unrestricted by non-exertional limitations. AR 16. In doing so, the ALJ considered Plaintiff's subjective complaints but found them unsupported by the medical evidence and not entirely credible when evaluated under Social Security Ruling 96-7p. AR 15. As previously stated, the mere allegation of subjective complaints does not automatically give rise to a requirement to call a vocational expert. *See Desrosiers v. Secretary of Housing and Health Services,* 846 F.2d at 557. Therefore, as the ALJ was not required to call a vocational expert in this situation, Plaintiff's argument fails.

Finally, Plaintiff argues that if the ALJ had properly included Plaintiff's limitations for occasional stooping and bending in the R.F.C. finding, she would have been required to call a vocational expert. However, this Court finds that the ALJ properly considered Plaintiff's

limitations when making her R.F.C. determination.  Therefore, it was appropriate for the ALJ to apply the grids.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Phia Heng.

IT IS SO ORDERED.

**Dated:**    **February 16, 2006**                    **/s/ Dennis L. Beck**

3b142a                                    UNITED STATES MAGISTRATE JUDGE